# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JAMES SURGENOR,<br>Plaintiff, | Case No. 1:16-cv-1179 |
| vs. | Black, J.<br>Litkovitz, M.J. |
| GARY MOORE, et al.,<br>Defendants. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff, a former inmate at the Lebanon Correctional Institution (LeCI)[1], brings this pro se civil rights action under 42 U.S.C. § 1983 against defendants Zachary Cherryholmes, J. Saylor, Tyler Ley, Tenet Bell, Brian Holley, and Quinllan Berry. The original complaint was dismissed on initial screening for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). (Docs. 4, 36). Plaintiff filed a motion to amend the complaint (Doc. 10), which the Court granted in part and denied in part. (Docs. 13, 36). Plaintiff was granted leave to pursue the following claims for relief: (1) an Eighth Amendment claim regarding the deprivation of meals by defendants Berry, Holley and Ley; (2) First Amendment retaliation claims against defendants Bell, Berry, and Saylor; and (3) a First Amendment claim alleging a violation of plaintiff's right to freely exercise his Christian religion against defendant Cherryholmes. (*Id.*).

Defendants move to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6). (Doc. 51). Defendants argue that the amended complaint fails to state a claim for relief; they are entitled to qualified immunity; and plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e.

---

[1] Plaintiff was released from LeCI on September 25, 2017. *See* Doc. 54 at 1.

## I. Factual allegations

Plaintiff's claims in the amended complaint are based on incidents that occurred between October 2016 and September 25, 2017. (Docs. 3, 10).[2] First, plaintiff alleges that defendants Berry, Holley and Ley violated his Eighth Amendment rights by depriving him of meals. (Doc. 10, ¶ 27). The amended complaint alleges a "continuous deprivation of nutrition" by these defendants over a three-month period which resulted in plaintiff losing 40 pounds after his arrival at LeCI, with most of the weight loss occurring during the three months before he filed the amended complaint. (*Id.*).

Second, plaintiff alleges that defendants Bell, Berry, and Saylor took various adverse actions against him in retaliation for the exercise of his First Amendment rights. Plaintiff makes the following allegations related to these claims: On November 15, 2016, defendant Bell called plaintiff back as he was exiting the chow hall and then began yelling at him to stop when he did not hear her. (Doc. 10, ¶ 22). Plaintiff stopped once he heard his name being called. (*Id.*). Bell approached plaintiff, poked him in the chest, and asked him, "What the fuck is your problem?" and "if he was retarded or something" because he must be if he had not heard her. (*Id.*). Bell then ordered plaintiff to stand against the wall and ordered two officers to go to plaintiff's cell and "tear it the hell up." (*Id.*). The officers complied and destroyed plaintiff's property "once again." (*Id.*). When plaintiff advised defendant Bell of this, she told him, "Write me up like you did Lt. Berry then bitch." (*Id.*).

Plaintiff alleges that on January 7, 2017, defendant Berry pulled him from his cell and escorted him to the staff restroom in C-block with another correction officer. (*Id.*, ¶ 25). Plaintiff alleges that Berry told him that if he "talks to her, writes her any further kites, or writes

---
[2] The amended complaint incorporates the factual allegations set forth in the original complaint, Doc. 3.

2

one more informal complaint resolution on her that [plaintiff] will 'get f***ed up.'" (Doc. 10, ¶ 25). Defendant Berry also allegedly stated that if plaintiff "even so much as looks at her ever again that he would be 'healing in his cell for the remainder of his time at LeCI.'" (*Id.*).

Plaintiff alleges that on February 2, 2017, defendant Saylor said when plaintiff arrived at his block after attending a group session, "Ah . . . this asshole. I know this bitch. Dumb-f**k. You are the one suing everyone. Well, let's see what we can do about that." (*Id.*). Plaintiff was then escorted into C-block and was falsely accused of possessing multiple identification tags. (*Id.*). Defendant Saylor purportedly then entered plaintiff's cell and destroyed plaintiff's legal papers, causing plaintiff to have to reprint his motion and complaints. (*Id.*). Officer Saylor yelled insults and threatening comments as he walked back to the officer's station.

Third, plaintiff alleges that on December 29, 2016, defendant Cherryholmes violated plaintiff's First Amendment right to freely exercise his Christian religion by confiscating all of plaintiff's religious materials, including his personal Christian Bibles valued at $250 to $350, and ordered plaintiff to "donate" them to the prison library. (Doc. 10, ¶ 24). Plaintiff states he complied with the directive after defendant Cherryholmes threatened to spray him in the face with pepper spray and to "beat the shit" out of him. (*Id.*).

## II. Rule 12(b)(6) standard

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw inferences in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The court "consider[s] the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference,

3

and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To avoid dismissal for failure to state a claim for relief, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

### III. Exhaustion of administrative remedies

#### 1. Exhaustion requirements under the PLRA

Exhaustion of administrative remedies "is mandatory under the [PLRA] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing

4

*Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The exhaustion requirement is not excused simply because the inmate has been released at the time a motion to dismiss is decided. *See Cox v. Meyer,* 332 F.3d 422, 424 (6th Cir. 2003). A plaintiff's status as a "prisoner" bound to exhaust his administrative remedies is to be determined as of the date he filed the lawsuit. *See Scheid v. Penrose*, No. 2:13-cv-1270, 2015 WL 1875391, at *2 (S.D. Ohio Apr. 23, 2015) (citations omitted). The plaintiff's amendment of the complaint after his release does not affect his status as a prisoner for purposes of the statute. *Siler v. Baldwin*, No. 08-15077, 2011 WL 6371012, at *4 (E.D. Mich. Dec. 20, 2011)).

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.*

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To properly exhaust a claim, a prisoner must take advantage "of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first

5

instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member or department most directly responsible for the subject matter of the complaint within 14 days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(K)(1). Second, if the inmate is unsatisfied with the response to his informal complaint, he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(K)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within 14 calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC") within 14 days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3).

### 2. **Plaintiff failed to exhaust his administrative remedies on certain claims.**

Defendants contend that plaintiff has not properly exhausted his administrative remedies for two claims alleged in the amended complaint: (1) his Eighth Amendment claim against defendants Ley, Holley and Berry based on the denial of meals; and (2) his First Amendment

retaliation claim against defendant Cherryholmes. (Doc. 51). The Court finds that plaintiff's allegations in the verified amended complaint, together with the exhibits attached to his complaint, show that plaintiff failed to properly exhaust his administrative remedies for these claims.

   *i.* *Eighth Amendment claim against defendants Ley, Holley and Berry*

Defendants allege that plaintiff failed to timely complete the three steps of the grievance process for his Eighth Amendment claim alleging that defendants Ley, Holley and Berry deprived him of meals over an extended period of time. (Doc. 51). Defendants acknowledge that plaintiff completed the first two steps of the grievance process for this claim. (*Id.* at 6). They assert that plaintiff completed the first step by filing an Informal Complaint Resolution (ICR) in October 2016 complaining that he was not permitted to eat dinner on October 27, 2016. (*See* Doc. 10-3 at 5). Plaintiff completed the second step by filing a Notification of Grievance (NOG) on November 9, 2016. (*See* Doc. 10-4 at 8, 9). The grievance was denied on November 23, 2016, and plaintiff was informed that he could appeal the decision to the Chief Inspector within 14 calendar days and that appeal forms were available in the office of the Inspector of Institutional Services. (*Id.* at 9). Plaintiff did not timely complete the third step. Plaintiff filed an appeal to the Chief Inspector. (*Id.* at 11-12). However, the Chief Inspector denied the appeal as untimely under OAC 5120-9-31 on December 19, 2016, because the appeal was received by the Chief Inspector's office on December 15, 2016, which was more than 14 days after disposition of the grievance. (*Id.* at 13). Plaintiff does not dispute in his response to the motion to dismiss that he failed to timely appeal the disposition of his NOG. (Doc. 54). By not timely completing this step in accordance with the applicable regulations, plaintiff failed to properly exhaust his administrative remedies for his Eighth Amendment claim against defendants Ley,

7

Holley and Berry. *Woodford*, 548 U.S. at 90 (proper exhaustion requires compliance with an agency's deadlines).

  *ii. First Amendment claim against defendant Cherryholmes*

Defendants contend there is no evidence that plaintiff ever filed an ICR as to his claim that Cherryholmes confiscated plaintiff's religious materials on December 30, 2016; instead, plaintiff filed a grievance directly with the Inspector of Institutional Services on January 25, 2017. (Doc. 51 at 7; *see* Doc. 10-5 at 7).

The exhibits attached to the amended complaint do not include an ICR related to the Cherryholmes incident. Nor is there any other evidence that plaintiff filed an ICR related to the matter.[3] Moreover, the exhibits show that plaintiff did not properly complete the next two steps of the grievance procedure. The NOG plaintiff filed on January 25, 2017 was denied on February 8, 2017, based on plaintiff's failure to comply with the steps and time limits of the grievance process. (Doc. 10-5 at 7). Mrs. Austin stated in the disposition of grievance that there was no evidence plaintiff had ever filed an ICR with Mrs. Rutherford; Mrs. Rutherford answered a complaint plaintiff sent her on January 7, 2017; and plaintiff provided no copy of an ICR he allegedly filed on December 30, 2016. (*Id.*). The disposition of grievance states:

> In my investigation of your complaint, I found that you have no evidence of ever filing an ICR with Ms. Rutherford. In fact, this Inspector has no copy and neither did the Unit Manager. She did answer the one that you sent her on 1-7-17. You also provided no copy of the alleged ICR that you claim [] you filed on 12-30-16. You then waited 26 days to file this complaint. No cursory review will be given as you are aware of the steps and time limits of the inmate grievance procedures.

---

[3] Plaintiff sent a "kite" to Institutional Inspector Mrs. Austin informing her that he had filed informal complaints with Mrs. Rutherford on December 30, 2016 and January 7, 2017 "regarding a situation with Officer Cherryholmes," and he still had not received an answer. (Doc. 10-5 at 3). Plaintiff asked for a "Direct [NOG]." (*Id.*). The kite is date-stamped January 18, 2017. The only ICR included in the exhibits that is dated January 7, 2017 relates to the incident involving defendant Berry, not defendant Cherryholmes. (*Id.* at 10).

8

(*Id.*). There is no indication in the record that plaintiff completed the third step of the grievance process by filing an appeal from the disposition of his grievance to the Chief Inspector. The exhibits to the amended complaint do not include an appeal to the Chief Inspector from the disposition of his grievance. Further, plaintiff does not dispute in his response to the motion to dismiss that he failed to pursue an appeal from the disposition of this grievance. Defendants have carried their burden to show that plaintiff failed to exhaust his administrative remedies for his First Amendment retaliation claim against defendant Cherryholmes.

    *iii.*    *Plaintiff has not shown a valid excuse for his failure to exhaust*

Plaintiff vaguely alleges in the complaint that while several of his grievances were denied and exhausted, many were not exhausted due to his inability to "effectively continue through to the corresponding stages of the ODRC administrative remedies." (Doc. 54 at 3). However, plaintiff has not alleged facts in the amended verified complaint or in response to defendants' motion to dismiss to show that he was precluded from presenting his claims at all three steps of the grievance procedure. Plaintiff simply contends that there are inherent inequities in the ODRC and the Ohio Administrative Code that favor staff over inmates such that no unbiased decision on a grievance can ever be made. (*Id.* at 4). Insofar as plaintiff asserts these alleged structural biases somehow precluded him from exhausting his administrative remedies, his generalized assertions, absent any factual allegations to support them, are insufficient to excuse plaintiff's failure to exhaust the grievance process. Plaintiff is barred under the PLRA, 42 U.S.C. § 1997e(a), from pursuing these claims in this Court until he has exhausted his remedies under the Ohio inmate grievance procedure. *See Konteh*, 450 F.3d at 654 (if a prisoner's complaint includes both exhausted and unexhausted claims, the unexhausted claims should be dismissed without prejudice while the exhausted claims are permitted to proceed) (citations omitted).

Plaintiff's Eighth Amendment claim against defendants Ley, Holley and Berry and his First Amendment claim against defendant Cherryholmes should be dismissed without prejudice for failure to exhaust his administrative remedies under Ohio Admin. Code § 5120-9-31(K). *Chasteen v. Jackson*, No. 1:09-cv-413, 2012 WL 1564493, at *5 (S.D. Ohio May 3, 2012) (dismissal of a case for failure to exhaust is normally without prejudice) (citing *Konteh*, 450 F.3d at 654).

## IV. First Amendment retaliation claims against defendants Bell, Berry and Saylor

Defendants Bell, Berry and Saylor move to dismiss plaintiff's First Amendment retaliation claims on the ground the amended complaint fails to state a claim for relief for violation of plaintiff's First Amendment rights. (Doc. 51). Defendants allege they are entitled to Eleventh Amendment immunity to the extent plaintiff sues them in their official capacities and to qualified immunity on plaintiff's claims against them in their individual capacities.

### 1. Official capacity claims

Plaintiff's claims against defendants in their official capacities must be dismissed to the extent he seeks monetary damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139 (1993); *Edelman v. Jordan,* 415 U.S. 651 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio,* 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman,* 415 U.S. at 663. A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which

10

defendants are agents. *Monell v. Dept. of Soc. Services of City of N.Y.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70-71 (1989); *see also Cady v. Arenac Co., 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.") (citation and ellipsis omitted)). Therefore, all of the named defendants are immune from suit in their official capacities.

### 2. Individual capacity claims

Defendants move to dismiss plaintiff's retaliation claims brought against defendants Bell, Berry and Saylor in their individual capacities on the ground plaintiff's allegations do not satisfy the essential elements of a retaliation claim. (Doc. 54). Defendants contend that because plaintiff's allegations do not show that they violated his clearly-established First Amendment rights, they are entitled to qualified immunity insofar as he sues them in their individual capacities.

A prisoner's claim that a defendant retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso,* 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter,* 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct motivated the adverse action, at least in part. *Id.* (quoting *Thomas v. Eby,* 481 F.3d 434, 440 (6th Cir. 2007) (in turn quoting *Thaddeus-X,* 175 F.3d at 394).

Inmates have an undisputed First Amendment right to file non-frivolous grievances against prison officials on their own behalf. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Reyes v. Palmer*, No. 1:17-cv-755, 2017 WL 5166705, at *5 (W.D. Mich. Nov. 8, 2017). However, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

An "adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396. As a general rule, the adverse action question "should survive the pleading stage." *Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011) (citing *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002)). Examples of adverse actions sufficient to meet the "person of ordinary firmness" standard include initiating a retaliatory transfer to another prison when it is foreseeable that negative consequences will result, threatening to impose disciplinary sanctions, issuing major misconduct reports, and threatening the use of physical force. *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). A retaliatory cell search and seizure of an inmate's legal documents also qualify as actionable adverse actions. *Johnson*, 308 F.3d at 604-05.

"Prisoners are expected to endure more than the average citizen." *Reynolds-Bey*, 428 F. App'x at 503 (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)). Moreover, "some actions are so *de minimus* that they do not rise to the level of a constitutionally cognizable injury." *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) (citing *Thaddeus-X*, 175 F.3d at 396). Thus, routine inconveniences such as "the single search of a prison cubicle would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Reynolds-Bey*, 428 F. App'x at 503 (quoting *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2004)).

The prisoner "must allege a chronology of events from which retaliation may plausibly be inferred" to state a clause of action for retaliation. *Manning v. Bolden*, 25 F. App'x 269, 272 (6th Cir. 2001) (citing *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). *See also Reyes*, 2017 WL 5166705, at *6; *Rienholtz v. Campbell*, 64 F. Supp.2d 721, 732 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (table) (claims of retaliation must include a "chronology of events from which retaliation may plausibly be inferred") (quoting *Cain*, 857 F.2d at 1143 n.6). Conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive. *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *see also Reyes*, 2017 WL 5166705, at *6. "This is especially true where . . . the plaintiff is a prolific filer of grievances." *Reyes*, 2017 WL 5166705, at *6; *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

Qualified immunity "shields government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises a qualified immunity defense to a claimed constitutional violation, the plaintiff must satisfy a two-pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the official's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the plaintiff's

submissions, was the right clearly established at the time of the injury. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it when resolving an official's qualified immunity claim. *Pearson*, 555 U.S. 223.

    *i.*    *Plaintiff's retaliation claim against defendant Berry*

Defendants move to dismiss plaintiff's First Amendment retaliation claim against Berry for failure to state a claim for relief. (Doc. 51 at 14-15). Defendants contend that plaintiff's allegations do not satisfy the first prong of a retaliation claim because plaintiff does not assert that he actually wrote a "kite" or ICR against Berry which would constitute protected conduct. (*Id.* at 14). This is not accurate. The complaint as amended includes allegations that plaintiff filed an ICR complaining about Berry in October 2016, followed by a NOG and appeal to the Chief Inspector. (Doc. 3, ¶¶ 19, 20). Plaintiff has included as an exhibit to the amended complaint a copy of an ICR dated October 31, 2016, which relates to a complaint against Berry. (Doc. 10-3 at 5). Plaintiff's grievance against Berry satisfies the first prong of a retaliation claim for pleading purposes.

Defendants also contend that plaintiff's allegations against Berry do not satisfy the adverse action element of a retaliation claim. Plaintiff alleges in the amended complaint that on January 7, 2017, defendant Berry pulled him from his cell and escorted him to the staff restroom in C-block with another correction officer. (Doc. 10, ¶ 25). Plaintiff alleges that Berry told him that if he "talks to her, writes her any further kites, or writes one more informal complaint resolution on her that [plaintiff] will 'get f***ed up.'" (*Id.*). Defendant Berry also allegedly stated that if plaintiff "even so much as looks at her ever again that he would be 'healing in his

14

cell for the remainder of his time at LeCI.'" (*Id.*). Defendants argue that verbal harassment or idle threats of this nature are not sufficient to establish a constitutional violation. (Doc. 51 at 15, citing *Wingo v. Tennessee Dept. of Corrections*, 499 F. App'x 453, 455 (6th Cir. 2012)).

Plaintiff's allegations suffice to satisfy the second element of a First Amendment retaliation claim. Sixth Circuit law holds that "certain threats or deprivations are so *de minimis* that they do not rise to the level of . . . constitutional violations." *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *6 (W.D. Mich. Dec. 19, 2018) (citing *Thaddeus-X*, 175 F.3d at 398; *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003)). Conversely, "[a] specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his [] First Amendment rights." *Id.* (citing *Thaddeus-X*, 175 F.3d at 396, 398) (threat of physical harm sufficient); *Yarrow*, 78 F. App'x at 542 (threat to change drug test results satisfied adverse action requirement)). Construing the complaint liberally and drawing all reasonable inferences in plaintiff's favor, his allegations that Berry pulled him from his cell and threatened him with physical harm if he filed another grievance are sufficient to satisfy the adverse action prong of a First Amendment retaliation claim.

Thus, plaintiff has stated a claim for violation of his clearly-established First Amendment rights against Berry. Defendant Berry should not be granted qualified immunity from liability on plaintiff's First Amendment retaliation claim, and the claim against Berry should not be dismissed at the pleading stage.

    ii.    *Plaintiff's retaliation claim against defendant Bell*

Liberally construing the amended complaint in plaintiff's favor, plaintiff apparently claims that defendant Bell ordered officers to "tear [his cell] the hell up" in retaliation for plaintiff filling a grievance against defendant Berry. (Doc. 10, ¶ 22). According to the

15

complaint as amended, Bell called plaintiff back as he was exiting the chow hall on November 15, 2016. (*Id.*). Plaintiff did not hear Bell initially and he did not stop until after she began yelling at him to stop and plaintiff heard he was being called. (*Id.*). Bell approached plaintiff, poked him in the chest, and asked him, "What the f**k is your problem?" and whether he was "retarded or something" because he did not hear her calling him. (*Id.*). Bell then ordered two officers to go to plaintiff's cell and "tear it the hell up." (*Id.*). The officers obeyed Bell's order and destroyed plaintiff's property "once again." (*Id.*). When plaintiff advised Bell that this had occurred, Bell responded by telling plaintiff, "Write me up like you did Lt. Berry then bitch." (*Id.*).

Defendants argue that plaintiff has not stated a claim for relief against defendant Bell because his factual allegations do not satisfy the third element of a First Amendment retaliation claim. (Doc. 51 at 13-14). Defendants contend the factual allegations do not establish that plaintiff's filing of a grievance against Berry in October 2016 was a substantial or motivating factor in the cell search.

Plaintiff has not alleged sufficient facts to satisfy the three elements of a First Amendment retaliation claim against defendant Bell. Plaintiff's allegations indicate that Bell knew before ordering the two officers to "tear [his cell] the hell up" that plaintiff had engaged in protected conduct by filing a grievance in October 2016 against her fellow correction officer, Berry. (Doc. 3, ¶ 19; Doc. 10, ¶ 22). However, there are no allegations in the amended complaint to show a link between the October 2016 grievance against Berry and Bell's order, which she gave immediately following her verbal confrontation with plaintiff on November 15, 2016. According to plaintiff, Bell told him that he could write her up after plaintiff complained that the officers had destroyed his property while following Bell's order. Although Bell

16

allegedly referenced a complaint plaintiff had filed against defendant Berry when she told him he could write her up, the possibility of a connection between the grievance against Berry and Bell's order to tear up plaintiff's cell is too attenuated, absent additional facts, to support a plausible inference that Bell was motivated by retaliation on Berry's behalf. *See Wingo*, 499 F. App'x at 455 (the plaintiff's allegation of retaliation was "conclusory and insufficient to state a claim because he set forth no facts which would support his contention that the defendants were motivated by retaliation.") (citing *Thaddeus–X*, 175 F.3d at 394). Plaintiff has not alleged any additional facts which, when considered together with Bell's comment, could support a reasonable inference that his filing of the grievance against Berry motivated Bell's adverse action. Accordingly, defendant Bell is entitled to qualified immunity on plaintiff's claim against her. The motion to dismiss should be granted as to defendant Bell.

    *iii.    Plaintiff's retaliation claim against defendant Saylor*

Plaintiff claims that on February 2, 2017, he was falsely accused of possessing multiple identification tags and Saylor entered and ransacked his cell after stating, "You are the one suing everyone. Well, let's see what we can do about that." (Doc. 10, ¶ 26). Plaintiff alleges that defendant Saylor destroyed his legal papers, which caused plaintiff to have to reprint his motion and complaints. (*Id.*). Defendants contend that plaintiff has failed to state a claim for retaliation against defendant Saylor because there is no allegation that plaintiff engaged in protected conduct. (Doc. 51 at 15-16).

Filing a non-frivolous lawsuit is protected conduct that satisfies the first prong of a retaliation claim. *Herron*, 203 F.3d at 415. A review of the docket shows that plaintiff engaged in protected conduct by instituting this lawsuit on December 30, 2016. (Doc. 1). Plaintiff filed a motion to proceed *in forma pauperis* and submitted a complaint that named several LeCI

17

correction officers and officials as defendants on that date. (Doc. 1). Plaintiff was granted leave to proceed *in forma pauperis* and the complaint was filed on February 1, 2017. (Doc. 3). Plaintiff alleges that defendant Saylor commented that plaintiff was "suing everyone" and destroyed plaintiff's legal papers on February 2, 2017, the day after plaintiff instituted the lawsuit and the complaint was filed. Plaintiff therefore engaged in protected conduct that satisfies the first prong of his retaliation claim against Saylor.

Further, the Sixth Circuit has indicated that a "retaliatory cell search and seizure of an inmate's legal documents satisfies the adverse action prong of the *Thaddeus-X* test." *Johnson*, 308 F.3d at 605 (citing *Walker v. Bain,* 257 F.3d 660, 664 (6th Cir. 2001)). Plaintiff's allegations that Saylor searched his cell and destroyed his legal papers in retaliation for plaintiff filing a lawsuit are sufficient to establish for pleading purposes that plaintiff was subjected to an adverse action "*capable* of deterring a person of ordinary firmness" from exercising his rights. *Id.* (quoting *Thaddeus–X,* 175 F.3d at 398) (emphasis added by *Johnson*).

Plaintiff has stated a claim against defendant Saylor for violation of his First Amendment rights. Defendant Saylor has not shown that the law governing this claim was not clearly established on the date of the alleged incident. Defendant Saylor therefore is not entitled to qualified immunity on plaintiff's First Amendment retaliation claim. The First Amendment claim against defendant Saylor should not be dismissed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motion to dismiss the complaint (Doc. 51) be **GRANTED** for failure to exhaust administrative remedies under 42 U.S.C. § 1997e as to plaintiff's Eighth Amendment claim against defendants Ley, Holley and Berry and plaintiff's First Amendment retaliation claim against defendant Cherryholmes. These claims should be **DISMISSED** without prejudice.

2. Defendants' motion to dismiss the complaint (Doc. 51) be **GRANTED** for failure to state a claim for relief as to plaintiff's First Amendment retaliation claim against defendant Bell. The claim against defendant Bell should be **DISMISSED**.

3. Defendants' motion to dismiss (Doc. 51) be **DENIED** as to plaintiff's First Amendment retaliation claims against defendants Berry and Saylor.

Date: 2/8/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JAMES SURGENOR,
Plaintiff,

vs.

GARY MOORE, et al.,
Defendants.

Case No. 1:16-cv-1179

Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).